Coös,
June 29, 1921.

### GEORGE W. BLANCHARD & SON CO. *v.* AMERICAN REALTY CO.

Under P. S., c. 137, s. 3 the title to standing timber cannot be transferred by an
instrument not under seal.

If a contract, not under seal, for the sale of standing timber provides for pay-
ments of certain fixed amounts at specified dates irrespective of the amount
cut and constitutes no more than a license to enter and cut, and if at the
execution of such contract nothing remains to be done by the vendor and he
has done nothing to interfere with the vendee's enjoyment of his rights, his
failure to exercise the license and to cut all the timber is not a defence to the
vendor's action to recover the full amount of all the payments.

Notwithstanding a notice in such case by the vendee of his abandonment of his
rights under the contract, the vendor may recover the agreed price, and he is
not limited to a recovery of the difference between that price and the value
of the uncut timber.

In an action by a foreign corporation to recover the third instalment due upon
a severable contract the fact that the plaintiff was not registered pursuant to
Laws 1913, c. 187, until after the second instalment became due, does not
constitute a defence.

ASSUMPSIT, to recover the third instalment of $25,000, due April
1, 1919, under the contract which was involved in the former suit
between the same parties. 79 N. H. 295. The contract was not under
seal, and provided that "The vendor agrees to sell and does hereby
sell, and the Purchaser agrees to buy and does hereby buy, and
agrees to pay for all the pulp timber on a certain tract of land,
according to the terms and conditions as hereinafter set forth."

In December, 1918, the defendant notified the plaintiff that it
had abandoned the contract and should not cut any more of the tim-
ber. The plaintiff has always denied the defendant's right to termi-
nate the contract.

The plaintiff is a Maine corporation, and did not comply with
Laws 1913, c. 187, until May 9, 1918. The defendant's motion to
dismiss the suit and the question whether the plaintiff can recover
the instalment, or is limited to damages measured by the difference
between the contract price and the value of the timber left standing,

were transferred without a ruling by *Marble*, J., from the December term, 1920, of the superior court.

*Sullivan & Daley* and *Ira W. Thayer* (*Mr. Sullivan* orally), for the plaintiff.

*Drew, Shurtleff, Morris & Oakes* and *Irving A. Hinkley* (*Mr. Morris* orally), for the defendant.

PEASLEE, J. The motion to dismiss the action because the plaintiff, being a foreign corporation, had not complied with Laws 1913, c. 187 (*Ensign* v. *Christiansen*, 79 N. H. 353), when its cause of action accrued, is based upon the assumption that its refusal to pay an instalment when it became due was a breach of the entire contract. The required appointment of the secretary of state as attorney for the service of process had been made before the instalment now sued for became due under the terms of the contract; and unless the failure to pay the earlier instalment was a breach of the entire contract, the present cause of action had not accrued when the statute was complied with. This question is involved in the prior decision in the case. 79 N. H. 295. If the position now taken by the defendant were sound, all the plaintiff's rights under the contract should have been considered and adjusted in the earlier litigation. But it was there held that "the jury were properly instructed that if they found the defendant was liable they should return a verdict for $25,000, as stipulated in the contract." *Ib.* 297.

The motion does not present any question concerning the alleged breach by a notification to the plaintiff that the defendant abandoned the contract, for the notification was subsequent to the plaintiff's compliance with the statute. The motion to dismiss the action should be denied. The question whether, if the breach sued for had occurred before compliance with the statute, the plaintiff could maintain a suit after a subsequent compliance, is one upon which no opinion is expressed.

The effect upon the issue of damages of the defendant's notice of its abandonment of its rights under the contract remains to be considered. The defendant's claim is that this act so far abrogated the contract that the plaintiff could not thereafter recover the agreed price, but only damages equal to the difference between that price and the value of the uncut timber.

The contract between the parties, not being under seal, did not operate to transfer title to the standing trees. *Kingsley* v. *Holbrook*, 45 N. H. 313. The statute then in force (R. S., c. 130, s. 3) has

since been reënacted (P. S., *c.* 137, *s.* 3), and its meaning is not now open for consideration, so far as this question is concerned. The contract was a mere license to enter and cut timber. *Lamprey* v. *Eastman*, 68 N. H. 198, and cases cited. But the answer to the query whether the contract conveyed title is not a controlling factor in the case. There is no dispute as to the facts that the defendant got precisely what it bargained for, that when the contract was executed nothing remained to be done by the plaintiff, and that the plaintiff has not since done any act to interfere with the defendant's full enjoyment of whatever it acquired by the contract. Under these circumstances it was the right of the plaintiff to stand upon the contract and sue for and recover the price agreed to be paid. *Bates Street Shirt Co.* v. *Place*, 76 N. H. 448, 452.

The failure of the purchaser under such a contract to exercise the license granted and cut all the timber does not give him a right to recover back part of the purchase price. *Lamprey* v. *Eastman*, *supra*. His bargain was for the right to cut all the timber he chose to cut. His decision to refrain from cutting it all can no more defeat the vendor's right to recover the full price than it could give the vendee a right to recover back part of the price. The rights of the respective parties do not depend upon which brings the suit. If the purchaser could compel the seller to retake the privilege granted by the license and account for it at its market value, in case he sued upon the promise to pay, no reason appears why the purchaser could not assert the same right in his suit to recover back a part of a prepayment. It is not the form of the action but the substance of the right which controls. The purchaser either has or has not the right to return what he bought to the vendor and claim credit for it. If he had the right, it would not be defeated by the fact that he gave money for it instead of a promise to pay. If, in this case, the practical effect of what the promisor did was to leave the title to the trees in the promisee, it was equally so in the earlier case. *Lamprey* v. *Eastman*, *supra*, is conclusive against the right here asserted. That decision rests upon the proposition that there had been full performance by the seller. The fact that the purchaser paid in advance is not relied upon to support the result. The answer to the promisors' claims in both cases is that they received "all they bargained and paid for." In this case as in that it was "their own fault that they did not take the remaining timber." *Ib.* 199.

The authorities relied upon by the defendant as establishing a different rule of damages (*Griswold* v. *Sabin*, 51 N. H. 167; *Hurd* v.

*Dunsmore,* 63 N. H. 171; *Davis* v. *Company,* 77 N. H. 403; *Haines* v. *Tucker,* 50 N. H. 307) are not in point. Each of these cases relates to an executory contract, which was terminated by the defendant's acts before the plaintiff had completed his part of the bargain, or by a refusal to participate in some concurrent act which was to complete the transaction.

*Griswold* v. *Sabin, supra,* was an action of covenant to recover damages for refusal to receive a deed of land and pay the purchase price agreed to be paid upon tender of the deed. The conclusion was that "where the vendee refuses to receive the deed and pay the price according to the contract" recovery should be limited to the difference between price and value. The question involved in this case was not considered. There is no suggestion as to what the result would have been if the deed had been delivered and accepted. Reliance is there put upon earlier decisions concerning sales of personal property; but none of those cases cover the present question.

*Stevens* v. *Lyford,* 7 N. H. 360, was a suit by the vendee to recover for failure to deliver lumber according to contract. It is apparent that the case has no bearing upon the present controversy. *Woodbury* v. *Jones,* 44 N. H. 206, was an action to recover damages for breach of a contract to board the plaintiff's family and permit him to carry on the defendant's farm. The contract was still executory upon both sides when broken. *Gordon* v. *Norris,* 49 N. H. 376, was an action to recover for hay sold and to be paid for in advance and thereafter to be delivered by the plaintiff. The conclusion that the damages were limited to the difference between price and value seems to be put upon the ground that there had been no delivery and title had not passed. The contract was still executory upon the part of the plaintiff. *Haines* v. *Tucker, supra,* is merely a typical case of refusal to carry out a contract which was still executory upon both sides.

A Massachusetts case is also relied upon in *Griswold* v. *Sabin, supra.* *Old Colony Railroad* v. *Evans,* 6 Gray 25. However the rule in that jurisdiction may be as to a refusal to accept and pay for a deed, the later cases make it plain that the law of that commonwealth permits a recovery as claimed by the plaintiff in this case. *White* v. *Solomon,* 164 Mass. 516; *International Text Book Co.* v. *Martin,* 221 Mass. 1; *Massachusetts Biographical Society* v. *Russell,* 229 Mass. 524.

*Hurd* v. *Dunsmore, supra,* was another suit upon a bond, the breach relied upon being (apparently) the refusal to accept the deed and

pay the purchase price.  The case is similar to *Griswold* v. *Sabin*, *supra*.  The opinion merely states the general rule and adds nothing to the discussion.

In so far as *Davis* v. *Company, supra*, has any application here, it is an authority for the plaintiff's position.  "By 'damages' as that term is used in the law of contracts, is intended compensation for a breach, measured in the terms of the contract."  *Ib.* 404.  The breach here is the failure to pay a certain sum of money, and that sum is the measure of the damages, because such are the terms of the contract.

No case has been cited holding that where the promisee has fully performed his part of the contract his right to claim the full measure of payment promised to him can be defeated or impaired by any subsequent renunciation of the contract upon the part of the promisor.

There is undoubtedly some conflict in the authorities as to the precise rule determining the event when the purchaser's right to repudiate and escape the payment of the purchase price is gone. Williston Cont., *s.* 1364 *et seq.*  It is not necessary to consider the matter here, for none of the authorities go far enough to relieve this defendant.  The cases making the delivery of property the test do not apply, for the defendant bought a license only.  Because this was all that the defendant bought, decisions in suits for a failure to accept and pay for property bargained for are not in point.  The cases upon tender and acceptance of a deed are disposed of by the fact that all the conveyance these parties ever contemplated was delivered and accepted.  In short, there was full performance of every legal obligation of both parties except the payment of money by the defendant.  The defendant's license to cut did not obligate it to remove the timber.  *Holden* v. *Loverin*, 79 N. H. 521.  Its notification to the plaintiff that no more timber would be cut was at the most the abandonment of a right, and in no sense a breach of its contract obligation.

The argument that this conclusion permits the plaintiff to keep its timber and also recover the price of it from the defendant rests upon the fallacy that the defendant bought the timber.  What it bought was of the same nature as an option.  The contract gave the promisor the right to thereafter acquire a title by cutting the timber.  The purchase price was to be paid for that right, and whether the right was or was not subsequently exercised has no bearing upon the promisee's right to enforce payment.

It is also urged that the defendant would be entitled to a decree for specific performance, and that if the plaintiff could be compelled

to convey it was its duty to do so, and that therefore the contract was still executory upon its part. It is at least doubtful whether the plaintiff could have been ordered to convey. To order it to give an absolute deed of the timber would be to confer upon the defendant rights in the timber remaining uncut at the end of five years. *Peirce* v. *Finerty*, 76 N. H. 38. It is manifest that the parties never intended such rights to accrue, and therefore such inequitable and unpromised performance would not be decreed. A decree for a deed of so much timber as the defendant should take within the five years, would confer upon the defendant no rights which are not available to it under the present contract. The only weakness in the defendant's rights, as the contract stands, is that in the peculiar situation the plaintiff might by its termination of the license put an end to the defendant's right to cut. But there is no suggestion that the plaintiff either has taken or will take such action. Unless the applicant for a decree for specific performance shows that his remedy at law is inadequate he is not entitled to the relief sought. "This is the ground of this branch of equity jurisdiction." *Eckstein* v. *Downing*, 64 N. H. 248, 260.

The defendant's sole ground for asking for a deed would be that if the plaintiff took certain action the defendant's rights would be interfered with. So long as the plaintiff did nothing, the defendant had a perfect right to take the timber and complete the contract. The fact that the plaintiff might, by violation of its promise, defeat the defendant's right, might be thought to come short of showing that action by the plaintiff, to cut off its power to do repudiatory acts it did not intend to do, was necessary to complete the performance of a contract which was fully performable without any further action on the plaintiff's part.

An unrecorded deed is full performance of a seller's contract for land; and the fact that he might give an innocent purchaser a subsequent deed which could defeat the first conveyance by priority of record, would not show that the seller had not fully performed his contract.

The mere fact that the seller still has certain obligations does not prove that the contract is still executory upon his part. It depends upon the nature of the obligations. "A contract executed, as well as one which is executory, contains obligations binding upon the parties. A grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right." *Fletcher* v. *Peck*, 6 Cranch 87, 137.

If there had been in this case a revocation of the license, or a threat thereof, the appropriate equitable relief for the defendant would have been an injunction against such action. *Stratton* v. *Stratton*, 58 N. H. 473. That is, non-action by the seller would be ordered to prevent a breach of the contract. If this is to be treated as a limited form of specific performance (*Lumley* v. *Wagner*, 1 De G. M. & G. *604) it does not necessarily show that the contract is executory within the rule as to return of property.

But if it be assumed that the situation and conduct of the plaintiff here were such that a decree for specific performance could have been ordered, the attitude and conduct of the defendant deprived it of any such right. What was the situation when the defendant attempted to repudiate the contract, in December, 1918? It was and had been claiming that the contract was invalid because executed without authority, and that it was voidable for fraud; and it was resisting the payment of an overdue instalment. 79 N. H. 295. One in such a situation has no right to specific performance. Having elected to attempt to rescind the contract, it could not thereafter be heard in equity to ask for such relief. *Eastman* v. *Plumer*, 46 N. H. 464.

Any right to specific performance was gone at the time the defendant sought to repudiate the contract, and no repudiatory right could then be based thereon. It was then, if not before, bound by the contract as it was originally executed.

The fundamental difficulty with the defendant's positions throughout the case is that it bought merely a license to enter and cut timber, and that such right, whether defeasible or not, has never been denied or interfered with in any way. It elected to purchase this right only and is not in a position to claim rights it might have had if it had made a different contract. The conclusion stated in the opinion in the suit for the earlier instalment is equally applicable to the present situation. "The plaintiff having fully performed its contractual duties, the defendant's liability for the payment of the amount of the instalment, without regard to the amount of timber it has cut, is clearly established by the unequivocal terms of the contract." 79 N. H. 295, 298.

*Case discharged.*

All concurred.